UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:10-cr-80 |
| v. ) | |
| ) | *Collier / Lee* |
| ZACHARY SMITH ) | |

# REPORT AND RECOMMENDATION

Before the Court is the motion of Defendant Zachary Smith to suppress contraband found during a search of his home and statements he made while in police custody on September 10, 2009 [Doc. 16].[1] Relying on *Georgia v. Randolph*, 547 U.S. 103 (2006), Defendant argues the officers' initial entry to his and his girlfriend's residence violated his Fourth Amendment rights because he was not asked for, and did not give, consent for the search, despite being present when his girlfriend was asked for consent. After considering the parties' evidence and arguments, I **RECOMMEND** that Defendant's motion to suppress [Doc. 16] be **DENIED**.

## I.  BACKGROUND

At the hearing, the Government offered the testimony of the sole witness to testify, Officer J. Aaron Patterson ("Patterson") of the Chattanooga Police Department ("CPD"). As relevant,[2]

---

[1] The motion was referred for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) [Doc. 18]. The Government filed a response in opposition [Doc. 19]. An evidentiary hearing was held on November 12, 2010. The Defendant submitted a timely post-hearing brief [Doc. 26], but the Court does not find it necessary to consider any further responsive pleading by the Government. Based on Defendant's post-hearing brief and the representations made at the hearing, it appears the only remaining basis argued for suppression is Defendant's lack of consent to the fugitive search, the issue addressed herein.

[2] Patterson gave extensive testimony during the hearing, but it is not necessary to summarize all of his testimony here. Instead, only the testimony necessary to the determination of the suppression issues will be addressed herein.

Patterson testified as follows: On September 10, 2009, CPD officers were searching for a fugitive who had successfully eluded law enforcement twice on the previous evening. Patterson received an anonymous tip that the fugitive was in the residence located at 1924 Sherman Street, the home of Defendant and his girlfriend, Acacia Baker ("Baker"). On the previous evening (when the fugitive eluded the CPD), Patterson saw the fugitive flee through this same residence. Patterson and another officer approached the residence around 7:30 p.m. on foot to investigate the tip and look for the fugitive.

As Patterson approached the house, he encountered Defendant and Baker, who was holding a baby, outside on the walkway about ten feet from their front door, which was open. Patterson was familiar with both individuals from his regular patrols of the Harriet Tubman project where this residence is located. Patterson knew Baker was the named lessee, but also knew Defendant lived in the residence.[3] As Defendant and Baker stood side-by-side on the walkway, Patterson greeted them, then briefly explained to both that he was looking for the fugitive and asked if the fugitive was in the residence. Baker denied the fugitive was in the residence. Patterson then asked if he could look for the fugitive in the residence, and Baker consented to such a search. Defendant, who was standing next to Baker, did not protest the search or object to Baker's consent. This exchange on the walkway only lasted a few moments because Patterson did not want the fugitive to have time to exit through a back door.

Patterson acknowledged he "directed" his request for consent to Baker, not Defendant, but said he was speaking to both Defendant and Baker. Patterson testified there was no reason to believe

---

[3] The parties agreed Defendant had a legitimate expectation of privacy in the residence.

Defendant could not hear his request for consent or Baker's affirmative response because Defendant was "right there" and had already been engaged in the casual pleasantries with Patterson when he first approached. Upon obtaining consent from Baker, Patterson and the other officer then approached the residence to conduct a search for the fugitive, leaving Defendant and Baker unattended.

When speaking to Defendant and Baker on the walkway, Patterson detected a strong odor of burnt marijuana coming from the persons of Defendant and Baker. As Patterson approached the residence, the odor of burnt marijuana grew stronger. Inside the residence, the odor increased more, culminating in Patterson's observation of a cloud of marijuana smoke when he searched the kitchen for the fugitive.

Having failed to locate the fugitive on the first floor of the residence, Patterson proceeded to conduct a fugitive search of the second floor. In a bedroom, Patterson observed a shotgun when he looked under the bed, a place Patterson knew to be a likely hiding place for a fugitive. The fugitive was not located during the search, which lasted around two minutes.

After the two-minute fugitive search, Patterson exited the residence and spoke to Baker. She admitted to smoking marijuana, but denied there was any more marijuana in the residence. When Patterson asked for permission to search for marijuana, Baker refused to consent to such a search. Officers then detained both Defendant and Baker at around 7:45 p.m. in order to obtain a search warrant for the residence. Patterson knew Defendant was a convicted felon and also believed Baker could not possess the shotgun as a user of marijuana. During the entire time it took to prepare and obtain a search warrant, approximately two and one-half hours, Defendant was placed in handcuffs

3

in the back of a patrol car at the residence. There is no evidence Defendant was questioned by police during this time period.

Patterson obtained a search warrant,[4] and upon a more thorough search of the residence pursuant to the warrant, officers located a few marijuana seeds, a loaded handgun, and a tactical light. The search lasted about one hour. After the search, at 11:09 p.m., Patterson explained to Defendant his Miranda rights.[5] Defendant orally acknowledged and waived his rights to silence and an attorney and made several statements during an interview that took place over the course of some 30 to 45 minutes with a few interruptions. Defendant gave various explanations for how the firearms came to be in his house. Toward the end of the interview, the handcuffs on Defendant were removed and Defendant was released from custody around midnight.

Baker was given a citation for a state law marijuana misdemeanor violation that night. Defendant was subsequently indicted on the pending federal felon-in-possession charge.

## II. ANALYSIS

Defendant argues that his consent cannot be inferred from his silence, and that his lack of consent trumps Baker's consent under *Georgia v. Randolph*, 547 U.S. 103 (2006). As Defendant points out, *Randolph* stands for the proposition that when one co-tenant grants consent to search but another co-tenant refuses, a warrantless search is unreasonable as to the resident who refuses. *Id.*

---

[4] The application, search warrant, and return were entered as Government's Exhibit 2.

[5] The recording of Patterson's Miranda advisement and Defendant's waiver was played during the hearing and was entered as Government's Exhibit 1. Defendant's motion also argued his rights were violated when statements were taken from him without his being advised of his Miranda rights, but he abandoned this argument during the hearing, conceding he was in fact advised of his Miranda rights prior to custodial interrogation.

*Randolph*'s holding, however, does not extend to a "potential objector" who stands by, mute. *Id. at 121*. Instead, *Randolph* allows one co-tenant to override another's consent only if he *expressly* refuses consent. *See id.* at 106 (articulating the question presented as whether a warrantless search may be conducted when "an occupant . . . is present at the scene and *expressly refuses* to consent") (emphasis added).[6]

The Sixth Circuit Court of Appeals ("Sixth Circuit") has refused to extend *Randolph* to protect silent co-tenants. As in *Randolph*, the Sixth Circuit recently held a search unlawful where the defendant "was physically present and actually objected . . . before the search began." *United States v. Tatman*, 2010 WL 3724593, at *7 (6th Cir. Sep. 13, 2010). The court, however, distinguished those facts from another line of cases in which "the defendant did not object, but argued that the search was unconstitutional because the police failed to provide a fair opportunity to do so." *Id.* at *8. In the latter type of case, a defendant's failure to expressly refuse consent is fatal to his *Randolph* claim. *See United States v. Stanley*, 351 F. App'x 69, 72 (6th Cir. 2009)

---

[6] In each of its various formulations, the *Randolph* Court's holding carefully adheres to the requirement of an "express" objection. *See*, *e.g.*, *id.* at 106 ("*stated* refusal to permit entry"); *id.* at 108 ("*states* a refusal to permit the search"); *id.* at 109 ("physically present and *refusing* permission to search"); *id.* at 114 ("a present and *objecting* co-tenant"); *id.* at 119 ("standing at the door and *expressly refusing* consent"); *id.* at 120 ("*express refusal* of consent"); *id.* at 121 ("a physically present fellow tenant *objects*"); *id.* ("in fact at the door and *objects*"); *id.* ("according dispositive weight to the fellow occupant's contrary indication *when he expresses it*") (all emphases added).

The Court's analysis of the question asked whether it was reasonable for the police to rely on the co-tenant's consent:

> [I]t is fair to say that a caller standing at the door of shared premises would have no confidence that one occupant's invitation was a sufficiently good reason to enter when a fellow tenant stood there saying, "stay out." Without some very good reason, no sensible person would go inside under those conditions.

*Id.* at 113. The reasonableness of an entry based on one occupant's invitation and another's silence is a very different question.

5

(concluding that a defendant's "refusal to speak with the officers" was not "the functional equivalent of an expressed non-consent"). Furthermore, even if police purposely avoid asking the defendant for consent because they believe it might be refused, a co-tenant's permission will be effective unless the police "remove[] the [defendant] from the entrance for the sake of avoiding a possible objection." *United States v. Ayoub*, 498 F.3d 532, 540-41 (6th Cir. 2007).

Here, it is uncontested that Defendant did not expressly refuse consent. Additionally, there is no evidence whatsoever that police somehow prevented Defendant from objecting to Baker's consent. These two facts alone are dispositive of the issue. Even if Patterson directed his request for consent to Baker instead of Defendant because he believed Defendant might refuse, Baker's consent was effective and could not be overcome by Defendant's silence.

Defendant, in his post-hearing brief, acknowledges the rule that a "potential objector [who] is 'nearby but not invited to take part in the threshold colloquy' loses out," *Ayoub*, 498 F.3d at 537 (*quoting Randolph*, 547 U.S. at 121), but attempts to distinguish this case on the basis that Defendant *was* in fact invited to participate in the threshold colloquy but did not consent. Defendant "infer[s]" from *Ayoub* that "if a person is invited to participate in the initial conversation [then] the officer must determine that the person heard and understood the request." [Doc. 26 at 2]. Defendant therefore argues that Patterson "did not complete the requirements of the initial inquiry to determine whether [Defendant] heard [and] understood his request to search . . . ." [Doc. 26 at 1]. Neither the language nor the logic of *Ayoub* require police to conduct such an inquiry. Like *Randolph* itself, *Ayoub* imposes a negative requirement on police seeking consent from a co-tenant: police may not "remove" the defendant "to avoid his potential objection." *Id.* at 541. *Ayoub*, however, recognizes

that police may even circumvent a defendant's possible objection by asking another co-tenant whom they believe is more likely to consent, *id.* at 540-41, and *Randolph*'s narrow holding was expressly limited to preserve an earlier case which held that police have no duty to rouse a sleeping defendant to ask his consent, 547 U.S. at 105 (*citing Illinois v. Rodriguez*, 497 U.S. 177 (1990)). If police are not obligated to request consent from an available defendant, they are certainly not obligated to ask the defendant whether he has heard and understood such a request.

I therefore **CONCLUDE** on the undisputed facts that Defendant's *Randolph* challenge cannot succeed.

## III. CONCLUSION

For the reasons stated above, I **RECOMMEND**[7] that Defendant's motion to suppress [Doc. 16] be **DENIED**.[8]

s/Susan K. Lee<br>
SUSAN K. LEE<br>
UNITED STATES MAGISTRATE JUDGE

---

[7] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

[8] This document contains hyperlinks to other documents. Such links are provided for the user's convenience only, and the Court does not guarantee their functionality or accuracy. Any link which directs the user to a document other than the document cited in the text will not supersede the textual citation. The Court does not endorse the provider or content of any document maintained by any other public or private organization.